UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION
at COLUMBUS

| | |
|---|---|
| TIM WILSON, individually and on behalf of all other Ohio residents similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| v. | Case No.: 2:20-cv-807 |
| MAX INSURANCE AGENCY, INC., d/b/a MUTUALAID EXCHANGE | |
| Defendant. | |

## CLASS ACTION COMPLAINT WITH JURY DEMAND

### Introduction

COMES NOW Plaintiff, Tim Wilson ("Wilson"), individually and on behalf of all others similarly situated, and for his Class Action Complaint against Max Insurance Agency, Inc. d/b/a MutualAid eXchange ("Max") states and alleges the following:

1. On or about February 24, 2019, Wilson's house located at 12351 Mary Street, Howard, Ohio (the "Insured Property") suffered damage covered by policy number HO3-016749-00, issued to Wilson by Max. The damage to the Insured Property required replacement and/or repair.

2. While Max did compensate Wilson for certain damage to his property, as alleged in detail below, under its actual cash value ("ACV") calculations, Max systematically and

improperly depreciated the cost of the labor required to repair the damage to the Insured Property. As a result, Max underpaid Wilson's claim, thus leaving Wilson under-indemnified.

3. By underpaying Wilson's claim, Max denied Plaintiff access to funds necessary to pick up the pieces during a period of great need and tremendous stress. This is directly contrary to the purpose of insurance – to protect insureds when they are in such need.

4. Max' systematic underpayment of claims is not limited to Wilson's claim. On information and belief, Max consistently depreciates the cost of labor from its ACV calculations for structural damage claims made throughout Ohio and has been doing so at all times relevant to the allegations of this Complaint. This includes payments to victims of natural disasters such as tornado and other wind storms, victims of fire, and those who have suffered from any other form of covered real property loss.

5. Ohio law allows an insurer to depreciate the value of building materials, but does not allow the depreciation of the cost of labor. As a result, and as detailed below, by depreciating labor costs from its ACV calculations around Ohio, Max has engaged, and continues to engage, in a systematic and unlawful pattern of underpayment of insurance claims.

## Parties

6. Plaintiff Tim Wilson is a resident and citizen of Knox County, Ohio.

7. Defendant Max is organized under the laws of the State of Kansas and headquartered in Overland Park, Kansas. Max is authorized to sell property insurance policies in the State of Ohio and is engaged in the insurance business in the State of Ohio, including Knox County.

## Jurisdiction and Venue

8. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(d)(2). There are more than 100 members in the proposed class, at least one member of the proposed class has state citizenship that is different than Defendant's, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

9. This Court has personal jurisdiction over Defendant as Defendant has sufficient minimum contacts with the state of Ohio, is authorized to do business in Ohio and has availed itself of the privilege of conducting business in the State of Ohio.

10. Venue is proper in this forum pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs's claim occurred in Knox County, Ohio, which is situated within the Southern District of Ohio, Columbus Division. Venue is also proper pursuant to 28 U.S.C. §1391(c) because Defendant is a corporation deemed to reside in this District.

**Factual Background**

11. Wilson contracted with Max for an insurance policy providing coverage for certain losses to the Insured Property. At all times relevant to this action, the Insured Property was insured under Max Policy No. HO3-016749-00.

12. On or about February 24, 2019, the Insured Property suffered damage covered by Max Policy No. HO3-016749-00. The damage to the Insured Property required replacement and/or repair. Wilson timely submitted a claim to Max requesting payment for the covered loss.

13. Max subsequently confirmed that Wilson had sustained a covered loss to the Insured Property, and that Max was contractually obligated to pay Wilson's claim for his covered loss pursuant to the terms of his insurance policy.

14. Soon after the February 24, 2019 loss, Max sent an adjuster to inspect the damage to the Insured Property. As set forth in written estimates and correspondence to Wilson, Max's adjuster determined that Wilson had suffered a covered loss in the amount of $25,052.15 to his home. The estimate included the cost of materials and labor required to complete the repairs. A copy of the estimate and correspondence sent to Wilson is attached as Exhibit A.

15. In calculating its payment obligations to Wilson, Max subtracted from the adjuster's replacement cost estimate for the home the $1,000.00 deductible provided for in the policy plus an additional $9,761.54 for depreciation. This resulted in a net ACV payment of $14,290.61.

16. The estimate upon which Max's ACV payment for the Insured Property was based indicates that Max depreciated both material costs and labor costs associated with repairs to the house.

## Policy Terms and Claims Settlement Practices

17. The insurance policy Max issued to Wilson and other members of the proposed class provides replacement cost value ("RCV") coverage for both total loss of and partial loss to covered dwellings and other structures and, in some cases, ACV coverage for certain structural components.

18. At all times relevant to this cause of action, Max's custom and practice has been to pay its RCV policy holders the ACV of covered loss claims, net of any applicable deductible. In order to qualify for additional payment and recover the full RCV of the covered loss where RCV coverage is available under the insurance policy, the insured party must repair, rebuild or replace the damaged property within a specific time frame and submit proof to Max that the repair or

replacement was timely completed. Costs that exceed the amount of the ACV payment are the responsibility of the policy holder.

19. At all times relevant hereto, Max's methodology for calculating ACV has been to determine the cost of repairing or replacing the damaged property then deduct depreciation.

20. In the context of insurance law, "depreciation" is defined as "[a] decline in an asset's value because of use, wear, obsolescence, or age." BLACK'S LAW DICTIONARY 506 (9th ed. 2009). Materials used in the repair or replacement of damaged property e.g. roofing shingles or metal, diminished in value over time due to use, wear, obsolescence, and age. As such, these are assets that can be depreciated. In contrast, labor is not susceptible to aging or wear. Its value does not diminish over time. Conceptually, and practically, depreciation simply cannot be applied to labor costs.

21. The basic purpose of property insurance is to provide indemnity to policyholders. To indemnify means to put the insured back in the position he or she enjoyed before the loss – no better and no worse. A policy that provides for payment of the ACV of a covered loss is an indemnity contract because the purpose of the ACV payment is to make the insured whole but not to benefit him or his because a loss occurred. See APPLEMAN ON INSURANCE 2D § 3823. An RCV policy expands the basic concept of indemnity to include coverage for repairs and replacement costs that exceed the ACV of the loss.

22. In order to recover the RCV of his covered losses, Plaintiff and other proposed class members are required to pay the out of pocket the difference between the cost of materials and labor necessary to repair or replace the damaged property and the depreciated ACV payment they received from Defendant. While an insurer may lawfully depreciate material costs in calculating the amount of an ACV payment owed to an insured, it may not depreciate labor costs. Defendant's

failure to pay the full cost of the labor necessary to repair or replace Plaintiff's damaged property in the ACV payments left Plaintiff under-indemnified and underpaid for his losses.

23. Defendant materially breached its duty to indemnify Plaintiff by depreciating labor costs associated with repairs to the Insured Property in the ACV payments, thereby paying Plaintiff less than what she was entitled to receive under the terms of the insurance contract.

24. The Ohio Department of Insurance has indicated that it is inappropriate and contrary to industry practice to depreciate labor costs when determining the ACV of structural damage claims.

## Fraudulent Concealment and Equitable Estoppel

25. At all times relevant to the allegations set forth herein, Defendant owed a fiduciary duty to, and/or had a special relationship with, Plaintiff and other proposed class members.

26. Throughout the claims process, Plaintiff and other proposed class members asked Defendant to pay them what they were entitled to receive as the ACV of their covered losses under the terms of the applicable insurance policy. Defendant affirmatively responded to Plaintiff and other proposed class members that their ACV payments were the full amount owed under policies and that no additional money was owed under the ACV calculation.

27. Throughout the claims process, Defendant affirmatively responded to Plaintiff and other class members by providing them with worksheets purporting to detail any and all deductions assessed in determining the ACV calculation pursuant to OAC Ann. 3901-1-54(I)(c)(2). However, in violation of their duty under OAC Ann. 3901-1-54(I)(c)(2) to detail any and all depreciation deductions, Defendant failed to detail, or even disclose, its depreciation of labor costs.

28. Neither Defendant's insurance policies in Max Mutual depreciates labor costs. Given Max's practice of depreciating labor costs, the insurance policies and adjuster worksheets are thus materially misleading.

29. Plaintiff and other proposed class members justifiably and reasonably relied upon Defendant's representations that they had received all they were entitled to recover as ACV payments from Defendant under the terms of their policies. Plaintiff and other proposes class members likewise justifiably and reasonably relied upon Defendant's insurance policies and adjuster worksheets, neither of which disclosed that Max depreciated labor costs in determining the ACV of claims.

30. Defendant had a duty to disclose to Plaintiff and other proposed class members that they were entitled to recover the full cost of labor necessary to repair or replace their property in their ACV payments. Defendant not only failed to disclose this information, but it also, by failing to disclose that it was depreciating labor costs in in its insurance policies and adjuster worksheets, acted in a manner designed to conceal their practice of labor depreciation from Plaintiff and other proposed class members. Because of Defendant's actions, Plaintiff and other proposed class members could not have known they had been underpaid on their claims through the exercise of due diligence.

31. As the party to the insurance policy with superior knowledge, Defendant intended, or at least expected, that its conduct in concealing the depreciation of labor expenses in determining ACV would be acted upon by, or influence, Plaintiff and other proposed class members.

32. At all times throughout the proposed class period, Defendant knew that it was depreciating labor costs in determining ACV.

33. Given Defendant's concealment of its depreciation of labor costs in determining ACV, Plaintiff and other proposed class members lacked knowledge, or the means to know, that Defendant was depreciating labor costs in determining ACV.

34. At all times during the proposed class period, Plaintiff and other proposed class members relied in good faith upon the conduct and statements of Defendant.

35. Defendant's fraudulent concealment of its depreciation of labor costs prevented Plaintiff and other proposed class members from promptly challenging Defendant's conduct.

36. Defendant's fraudulent concealment tolls the running of any statute of limitations or contractual attempt to shorten a statute of limitations that may otherwise be applicable to the claims for relief asserted herein.

## Class Action Allegations

37. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on his own behalf and on behalf and all others similarly situated. This action satisfies the Rule requirements of commonality, numerosity, and superiority.

38. The proposed class which Plaintiff seeks to represent is defined as follows:

All Max policyholders under any property policies issued by Max who made: (1) a structural damage claim for property located in the State of Ohio; and (2) which resulted in an actual cash value payment from which "non-material depreciation" was withheld from the policyholder; or which should have resulted in an actual cash value payment but for the withholding of "non-material depreciation" causing the loss to drop below the applicable deductible.

In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate software.
The class period for the proposed class is the maximum time period as allowed by applicable law.

The class excludes all claims arising under policy forms expressly permitting the "depreciation" of "labor" within the text of the policy form and any claims in which the initial actual cash value payment exhausted the applicable limits of insurance. The class

8

also excludes all claims wherein the initial actual cash value payment exhausted the applicable policy limits.

39. The members of the proposed class are so numerous that joinder of all members is impractical. Plaintiff reasonably believe that hundreds if not thousands of people geographically dispersed across Ohio have been damaged by Defendant's actions. The names and addresses of the members of the proposed class are identifiable through records maintained by Defendant, and proposed class members may be notified of the pendency of this action by mailed, published and/or electronic notice.

40. Common questions of law and fact exist as to all proposed class members and predominate over any questions affecting only individual proposed class members. The questions of law and fact common to the proposed class include, but are not limited to:

A. Whether Defendant's insurance policies allow Defendant to depreciate labor in calculating ACV payments for covered losses;

B. Whether Defendant's insurance policies are ambiguous concerning the depreciation of labor costs in calculating ACV payments, and if so, how Defendant's insurance policies should be interpreted;

C. Whether Defendant's depreciation of labor costs in making ACV payments for covered losses is a breach of the insurance contracts issued by Defendant to Plaintiff and other proposed class members.

D. Whether Plaintiff and other proposed class members have been damaged by Defendant's breaches, as alleged herein, and if so:

    i. What is the nature and extent of those damages; and

    ii. What relief should be awarded to Plaintiff and other proposed class members.

41. Plaintiff's claims are typical of the claims of all the proposed class members, as they are all similarly affected by Defendant's custom and practice of unlawful and unjust conduct and his claims are based on such conduct. Further, Plaintiff's claims are typical of the claims of all proposed class members because his claims arise from the same or similar underlying facts and are based on the same factual and legal theories. Plaintiff is no different in any material respect from any other member of the proposed class – all members of the proposed class had labor unlawfully depreciated by Max.

42. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the class they seek to represent. Plaintiff has retained counsel who are competent and experienced in class action litigation and complex insurance-related cases and will fairly and adequately represent the interests of the proposed class. Plaintiff and his counsel will prosecute this action vigorously.

43. A class action is superior to all available methods for the fair and efficient adjudication of this controversy. Joining all proposed class in one action is impracticable, and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most class members, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if proposed class members had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Moreover, individual litigation could result in inconsistent adjudications of common issues of law and fact.

44. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiff and proposed class members. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

45. No unusual difficulties are anticipated in the management of this case as a class action.

46. Class certification is further warranted because Defendant has acted or refused to act on grounds that apply generally to the proposed class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the proposed class as a whole.

## Count I – Breach of Contract

47. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

48. Defendant entered into policies of insurance with Plaintiff and other members of the proposed class. These policies govern the relationship between Defendant and Plaintiff and other proposed class members, as well as the manner in which claims for covered losses are handled.

49. The insurance policies at issue were drafted by Defendant and are essentially identical in all respects material to this litigation.

50. Plaintiff and other proposed class members complied with all material provisions and fulfilled his respective duties with regard to his policies.

51. The policies of insurance Defendant issued to Plaintiff and other proposed class members state that in the event of a loss Defendant may fulfill its initial contractual obligation to

11

an insured party by paying the ACV of the loss. At all times relevant hereto, Defendant's custom and practice has been, and is, to make such payments based upon Defendant's calculation of the ACV for the loss, net of any applicable deductible.

52. Defendant breached its contractual duty to pay Plaintiff and other proposed class members the ACV of his claims by unlawfully depreciating labor costs.

53. Defendant's actions in breaching its contractual obligations to Plaintiff and other proposed class members benefitted, and continue to benefit, Defendant. Likewise, Defendant's actions damaged, and continue to damage, Plaintiff and other proposed class members.

54. Defendant's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiff and other proposed class members.

55. Accordingly, Plaintiff and other proposed class members are entitled to recover damages sufficient to make them whole for the amounts Defendant unlawfully withheld from his ACV payments as labor cost depreciation.

## **Demand for Relief**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests that the Court grant the following relief:

A. Certify that this lawsuit may be prosecuted as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Appoint Plaintiff and Plaintiff's counsel to represent the proposed class;

C. Declare that Defendant has breached its contractual obligations to the Plaintiff and the proposed class by depreciating labor costs;

D. Award Plaintiff and the proposed class damages in an amount equal to the total amount of depreciated labor costs withheld on Plaintiff's and proposed

class members' claims that has not been paid to Plaintiff and proposed class members;

E. Award Plaintiff and the proposed class prejudgment and post-judgment interest on his liquidated and unliquidated damages;

F. Enjoin Defendant from engaging in the unlawful and unjust conduct complained of herein;

G. Award the proposed class all expenses and costs of this action, including attorney fees, and require Max to pay the costs and expenses of class notice and claims administration;

H. Trial by Jury; and

I. Any and all other relief to which Plaintiff and the other proposed class members appear to be entitled, including any extra-contractual damages.

    Respectfully submitted,

*/s/ Stephen G. Whetstone*
STEPHEN G. WHETSTONE (0088666)
Email: steve@whetstonelegal.com
**Whetstone Legal, LLC**
P.O. Box 6
2 N. Main Street, Unit 2
Thornville, Ohio 43076
Telephone: 740.974.7730
Facsimile:  614.829.3070

*Trial Counsel for Plaintiff
and the Proposed Class*

and

ERIK D. PETERSON (KY Bar 93003)*
**Mehr, Fairbanks & Peterson
 Trial Lawyers, PLLC**
201 West Short Street, Suite 800
Lexington, Kentucky 40507

13

Telephone:  859-225-3731
Facsimile:  859-225-3830
Email: edp@austinmehr.com

*Co-Counsel for Plaintiff and
the Proposed Class*

\*To be admitted *pro hac vice*.